UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) | |
| Plaintiff, | ) ) | No. 6:09-CR-61-ART-HAI-4 |
| v. | ) ) | RECOMMENDED DISPOSITION |
| JAMES WAGERS, | ) ) | |
| Defendant. | ) ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

On referral from District Judge Thapar (D.E. 184), the Court considers reported violations of supervised release conditions by Defendant James Wagers.

Judge Thapar entered a judgment against Defendant in May 2010 following a guilty plea to violating 21 U.S.C. §§ 841(a)(1) & 846, participating in a conspiracy to distribute oxycodone. D.E. 120.  His sentence was enhanced under 21 U.S.C. § 851 on account of a prior felony drug trafficking conviction.  *Id.*  Defendant received a prison sentence of 100 months, followed by a six-year term of supervised release.  *Id.*  His prison term was later reduced to 87 months.  D.E. 162.  He began his first term of supervised release on October 30, 2015.

On January 30, 2017, the United States Probation Office ("USPO") submitted a "Supervised Release Violation Report" ("the Report") that initiated these proceedings.  The Report charges two violations.  The first is an alleged violation of the condition requiring that Defendant "shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician."

According to the Report, on January 13, 2017, Defendant submitted a urine specimen that tested positive for methamphetamine.  This is a Grade C Violation.

Second, in relation to this unauthorized use of a controlled substance, the Report charges Defendant with violating the condition that he not commit another federal, state, or local crime. Noting the Sixth Circuit's decision that use of a controlled substance includes possession and Defendant's prior drug conviction, Violation #2 charges Defendant with conduct that would be a federal crime, that is, possession of methamphetamine, a Schedule II controlled substance.  Such conduct would be a Class E felony pursuant to 21 U.S.C. § 844(a), Simple Possession of a Controlled Substance.  This is a Grade B violation.

The Court conducted an initial appearance and preliminary hearing pursuant to Rule 32.1 on February 9, 2017.  D.E. 178.  After the presentation of evidence, Defendant conceded probable cause regarding both alleged violations.  *Id*.  The United States moved for interim detention; Defendant argued for release.  *Id.*  Based on the heavy defense burden under 18 U.S.C. § 3143(a), the undersigned remanded Defendant to the custody of the United States Marshal.  *Id*.

At the final hearing on March 1, 2017, Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583.  D.E. 186.  Defendant competently entered a knowing, voluntary, and intelligent stipulation to Violation #1.  *Id.*  Of course, his admission to the first violation provides a factual basis for the Court to find that he committed Violation #2.  By admitting that he used methamphetamine some time before January 13, he admitted drug possession, which for him is a federal felony.  In the Supervised Release context, the Sixth Circuit treats controlled substance use as equivalent to possession.  *See United States v. Crace*, 207 F.3d 833, 836 (6th Cir. 2000). Therefore, for purposes of Rule 32.1 proceedings, Defendant admitted the factual basis for both

2

violations as described in the Report. The United States thus established Violations # 1 and #2 under the standard of § 3583(e).

## I.

The Court has evaluated the entire record, including the Report and accompanying documents, and the sentencing materials from the underlying Judgment. Additionally, the Court has considered all of the § 3553 factors imported into the § 3583(e) analysis.

Under § 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant pleaded guilty to participating in a conspiracy to distribute oxycodone. Because of his prior state drug trafficking offense, this charge amounted to a Class B felony. *See* 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), 846; 18 U.S.C. § 3559(a)(3). For a Class B felony, the maximum revocation sentence provided under § 3583 is three years of imprisonment. 18 U.S.C. § 3583(e)(3).

The Policy Statements in Chapter 7 of the Sentencing Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original sentencing) and the "grade" of the particular violation proven. *See United States v. Perez-Arellano*, 212 F. App'x 436, 438-39 (6th Cir. 2007). Under § 7B1.1, Defendant's admitted conduct would qualify as a Grade C violation with respect to Violation # 1 and a Grade B violation with respect to Violation # 2. Given Defendant's criminal history category of V (the category at the time of the conviction) and a Grade B violation,[1] Defendant's range, under the Revocation Table of Chapter 7, is 18 to 24 months.

---

[1] *See* U.S.S.G § 7B1.2(b) ("Where there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade.").

A court may also re-impose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration actually imposed due to the violation. *See* 18 U.S.C. § 3583(b), (h). The post-revocation cap depends on the "term of supervised release authorized by statute for the offense that resulted in the original term of supervised release." *See* 18 U.S.C. § 3583(h). Given the nature of Defendant's conviction, pursuant to 21 U.S.C. § 841(b)(1)(C), there is no maximum term of supervised release that can be re-imposed.

## II.

At the final hearing, the government argued for revocation with twenty months of imprisonment, followed by five years of supervised release. First, the government stressed the seriousness of the underlying conviction, which involved large quantities of oxycodone tablets. According to the government, Defendant was "an average player in a serious offense." Regarding Defendant's history and characteristics, the government pointed out he had two prior DUIs, convictions for possession of marijuana and oxycodone, and a state conviction for trafficking hydrocodone (which involved three controlled purchases). Defendant's history of drug abuse thus birthed conduct that endangered the community. The government further argued that, by turning to methamphetamine, Defendant had "escalated" his drug use to a new and more dangerous type of narcotic. The government also noted that Defendant had received some drug treatment in the past, and was not compliant with his conditions of state parole. In fact, as the Court pointed out, he was on parole when he participated in the underlying conspiracy to distribute oxycodone.

In considering the extent of Defendant's breach of the Court's trust, the government noted that he had been under supervision for over a year without incident, and he had accepted responsibility for the breach. These were identified as mitigating factors. However, the

4

government also noted that the urine specimen at issue was diluted, which suggests that Defendant may have been trying to fool the USPO. According to the government, this aggravated his breach of trust.

Defense counsel presented two alternative dispositions. The first involved six months of weekend incarceration followed by a treatment program. The second involved inpatient drug treatment, followed by six months of weekend incarceration. Defense counsel stated that either scenario could be followed by an additional one to three years of supervised release. Also, Defendant would do his best to stay employed. Defendant purportedly has several available options for employment. Defense counsel argued that Defendant had been generally compliant on federal supervised release, had tried to stay gainfully employed, and deserved another chance.

Defense counsel argued that Defendant's criminal history is non-violent. Defendant had an eighth-grade education and suffered from learning disabilities. As such, succeeding in society was more difficult for him.

Defendant addressed the Court. He stated that drug treatment would be good for him. He said he needed help, and felt sorry for the inconveniences his violation had created.

### III.

At the outset, the Court notes that Congress does ***mandate*** revocation in a case of this nature. By statute, the Court must recommend revocation and imprisonment because Defendant possessed a controlled substance. *See* 18 U.S.C. § 3583(g)(1); *see also Crace*, 207 F.3d at 836 (equating use with possession).

To determine an appropriate revocation term of imprisonment, the Court has considered all the statutory factors imported into the § 3583(e) analysis, as well as the Guidelines Range.

The nature and circumstances of Defendant's underlying conviction for an oxycodone distribution conspiracy are quite serious.  *See United States v. Johnson*, 640 F.3d 195, 203 (6th Cir. 2001) (explaining that this sentencing factor focuses upon the original offense rather than the violations of supervised release).  It resulted in a 100-month sentence that was later reduced to 87 months.

As to his history and characteristics, his criminal history is also disconcerting.  He has multiple drug trafficking felonies.  And his history shows he is dangerous when using drugs, as demonstrated by his DUI convictions.  Further, his use of meth harmed not only himself, but contributed to an illicit drug market slathered in peril and violence.

The need to deter criminal conduct and protect the public are the dominant factors here. Defendant's meth use—and any illegal drug use for him—is new federal felony conduct.  The consequence must pack enough punch to deter further violations and to protect the public.

The need to avoid unwarranted sentencing factors also drives the penalty here.  The defense has not given the Court a compelling reason to deviate from the Guidelines range.  A sentence of 18-24 months for what may be a single dosage of an illegal drug may feel draconian at first blush.  But the Guidelines range in this case is driven by Defendant's criminal history. Without some compelling factual justification for departing downward, the Court cannot do so, in light of the case law on the subject.  *See United States v. Johnson*, 640 F.3d 195, 205 (6th Cir. 2011) (requiring that any deviation from the Guidelines range must be carefully considered as to its extent and be based on a specifically stated compelling justification).  The Court will thus recommend a within-Guidelines sentence.

The Court agrees that Defendant needs drug treatment.  He received some drug treatment in 2006.  However, his convictions for drug trafficking followed.  The record does not give the

Court a solid basis to believe that treatment in lieu of incarceration or significantly shortening the term would sufficiently address the factors the Court is bound to consider. He needs drug treatment, but its nature and duration are best left to the USPO. His previous conditions of release included such a treatment condition.

The Guidelines suggest that the ***primary*** wrong in the supervised release context is the violation of the Court's trust by an offender; the particular conduct is an important but secondary issue. *See* Guidelines 7 Pt. A(3)(b) ("[A]t revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator."). The Court must impose a sentence that is sufficient, but not greater than necessary, to address Defendant's breach of trust and the other statutory goals imported into § 3583(e). Here, Defendant breached the Court's trust by using an illegal drug and thereby committing a new crime. He may have compounded this breach by attempting to dilute the specimen. Defendant is warned that if he violates again, the penalty will increase.

For the reasons stated above, the Court finds that a sentence of 18 months' incarceration followed by five years of supervised release is sufficient, but not greater than necessary, to meet the section 3553(a) factors incorporated into this analysis. *See* 18 U.S.C. § 3583(e). Upon release, Defendant should be placed on supervised release under the same conditions previously imposed.

## IV.

Based on the foregoing, the Court **RECOMMENDS** revocation with a term of imprisonment of 18 months, followed by 60 months of supervised release.

7

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on Judge Thapar's docket upon submission.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As defined by § 636(b)(1), within fourteen days after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, *de novo*, by the District Court. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-54 (1985).

This the 2nd day of March, 2017.

Signed By:

*Hanly A. Ingram*

**United States Magistrate Judge**